**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TRAVAS M. P.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-CV-663-CVE-JFJ** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation.  Plaintiff Travas M. P. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled.  For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

## I.      General Legal Standards and Standard of Review

A claimant for disability benefits bears the burden of proving a disability.  42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a).  "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability.  20 C.F.R. §§ 404.1512(b), 416.912(b).  A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005).  Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 43-year-old male, applied for Title XVI supplemental security income benefits on July 24, 2015, alleging a disability onset date of January 7, 2010.  R. 15, 162-167. Plaintiff claimed he was unable to work due to conditions including anxiety, paranoia, knee problems, depression, and high blood pressure.  R. 243.  Plaintiff's claim for benefits was denied initially on August 25, 2015, and on reconsideration on August 5, 2016.  R. 63-93.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on February 21, 2018.  R. 36-62.  The ALJ issued a decision on April 5, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other jobs existing in the national economy.  R. 15-30. The Appeals Council denied review, and Plaintiff appealed.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of July 24, 2015.  R. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the knees; sleep apnea; morbid obesity; depression; and anxiety.  R. 18.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 19-20.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the area of adapting or managing oneself, and moderate limitations in the three areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.  R. 19.

3

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's mother's third-party statement, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work as follows:

> [T]he claimant can occasionally lift and/or carry 10 pounds and frequently lift and/or carry up to 10 pounds. He can stand and/or walk at least two hours in an 8-hour workday. He can sit at least six hours in an 8-hour workday. He cannot climb such things as stairs and ramps, stoop, kneel or crouch more than occasionally. He is limited to simple, repetitive tasks. He can relate to supervisors or co-workers only superficially. He cannot work with the public.

R. 20. At step four, the ALJ found that Plaintiff had no past relevant work. R. 28. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other sedentary work, such as Table Worker and Optical Goods Assembler. R. 29. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.  Issues

Plaintiff raises three points of error in his challenge to the denial of benefits: (1) the ALJ failed to incorporate any reaching limitations into his hypothetical to the VE, resulting in failures at steps four and five of the sequential evaluation; (2) the ALJ failed to properly assess the medical source and third-party opinions; and (3) the ALJ failed to properly assess the consistency of Plaintiff's complaints with the evidence of record. ECF No. 13.

## IV.  Analysis

### A.    ALJ Properly Considered Plaintiff's Reaching Ability

Plaintiff argues the ALJ committed reversible error by failing to include any reaching limitations in his hypothetical to the VE or the determinative RFC. In support, Plaintiff points to

4

(1) August 2016 observations by primary care physician Michael Underwood, M.D., of limited range of motion to the neck in extension and rotation (R. 316); (2) August 2016 cervical spine x-rays, which noted impressions of C4-C7 degenerative disc disease and spondylosis (R. 319); (3) September 2016 observations by orthopedist Thomas Craven, M.D., of limited range of motion in the cervical spine due to pain, decreased sensation over the left index finger, mild weakness in the left wrist extensors and biceps, and diminished left brachioradialis reflex (R. 306); and (4) Plaintiff's own complaints of difficulty reaching and radiating neck pain (R. 53, 185, 305).

Plaintiff's argument is unpersuasive. At step two, the ALJ found Plaintiff's degenerative disc disease of the cervical spine was a severe impairment. R. 18. In establishing the RFC, the ALJ noted the findings of the August 2016 cervical spine x-rays and Dr. Craven's September 2016 observations. R. 26 (citing R. 305-307, 319). The ALJ also granted "little probative weight" to Plaintiff's own testimony, because his allegations about the disabling severity of his pain were inconsistent with the evidence of record, he had a very poor earnings record, and he had a history of marijuana use since childhood. R. 21.

Although the ALJ did not expressly note Dr. Underwood's August 2016 observations of limited neck ranges of motion, Dr. Underwood did not indicate any limitations in reaching ability. The ALJ is not required to discuss every piece of evidence in the record. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted). Plaintiff points to no part of the record to suggest that he was more limited in his reaching ability than the ALJ indicated in the RFC. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.

B.     **ALJ Properly Evaluated Opinion Evidence**

Plaintiff contends the ALJ committed reversible error in evaluating opinion evidence from Plaintiff's primary care physician, Dr. Underwood, and lay opinion evidence from Plaintiff's mother.

1.     **Dr. Underwood's Opinion**

Plaintiff argues the ALJ improperly assigned "little to no weight" to a Medical Source Statement ("MSS") opinion from treating physician Dr. Underwood.  When a medical opinion comes from a treating source, the ALJ must give it controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  If the ALJ finds the opinion is deficient in either respect, then the ALJ must consider several factors in determining the weight to be given to the medical opinion.  *See* 20 C.F.R. § 416.927(c).  Those factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist.  *Id.*  If, after considering the relevant factors, the ALJ rejects the opinion completely, "he must then give specific, legitimate reasons for doing so."  *Watkins*, 350 F.3d at 1301 (quotations omitted).  In all cases, the ALJ must give "good reasons" for the weight assigned to a treating physician's opinion.  20 C.F.R. § 416.927(c)(2); *Watkins*, 350 F.3d at 1301.

In December 2016, Dr. Underwood filled out an MSS form, which stated that Plaintiff's diagnosis was "M54.5," or low back pain.  R. 28, 378.  He recommended treatment of medications and seeing a specialist.  R. 378.  He opined that Plaintiff's condition prevented him from working, and that the condition could be only partially controlled by medication.  *Id.*  He opined that Plaintiff

6

was unable to work at this time, and would be unable to work for an undetermined length of time. *Id.*

The ALJ stated he was not giving "controlling weight" to Dr. Underwood's MSS and was giving it "little to no weight." R. 28. The ALJ explained that the medical evidence of record did not support Dr. Underwood's MSS. *Id.* Specifically, Plaintiff's low back pain had been addressed with over-the-counter and prescription pain medications, and he had not required additional treatment such as physical therapy or surgery for his complaints. *Id.* The ALJ further explained that the record showed limited to no complaints of back pain since September 2016 despite access to the Cherokee Nation's low- or no-cost medical treatment, which "may indicate that claimant's back pain has been manageable with over-the-counter medication." *Id.* Finally, the ALJ explained that treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. *Id.*

Plaintiff argues the ALJ's weighing of Dr. Underwood's MSS was improper, because the ALJ failed to perform the required analysis pursuant to the regulations. Plaintiff contends the evidence strongly supports his complaints of back and neck pain, as well as his mental impairments of depression and anxiety. Plaintiff also contends the ALJ was required to explain his reasons for discounting Dr. Underwood's opinions on issues reserved to the Commissioner, and that the ALJ was not entitled to discount the MSS based on Dr. Underwood's signature's being illegible. *See* ECF No. 13 at 4-6.

Plaintiff's arguments fail. First, as the ALJ correctly noted, Plaintiff's back pain has been addressed solely by medications, and Plaintiff did not seek treatment for back pain after September 2016 despite access to low- or no-cost treatment options. R. 28 (citing R. 305-311). Second, the ALJ appropriately rejected Dr. Underwood's opinion that Plaintiff was unable to work, because it

is an opinion reserved solely to the Commissioner.  *See* 20 C.F.R. § 416.927(d)(1)-(3) (explaining that opinion that claimant is disabled is not a medical opinion but is opinion on issue reserved to Commissioner, because it is a case-dispositive administrative finding); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (treating physician's opinion on issue reserved to Commissioner is not binding on Commissioner in making his ultimate determination of disability).  Plaintiff's argument that the ALJ was required to further explain his reasons for rejecting such an opinion is unsupported and unconvincing.  *Cf. Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008) (finding reversible error where ALJ failed to make explicit finding regarding weight assigned to treating physician's opinion, and rejecting argument that ALJ was not required to assess opinion's weight when opinion addressed issues reserved to Commissioner).  Dr. Underwood's MSS is vague and unsupported by any specific functional assessments or objective clinical findings.  R. 378.  *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (physician's statement providing no information about the nature and severity of claimant's physical limitations or activities he could still perform was not a true medical opinion).

Third, contrary to Plaintiff's argument, the ALJ did not assign diminished weight to Dr. Underwood's MSS based on the fact that his signature was illegible.  The ALJ did (accurately) note that Dr. Underwood's signature was illegible but gave different reasons for assigning the MSS "little to no weight."  R. 28.  Therefore, the ALJ had no duty to re-contact Dr. Underwood for clarification.

The undersigned finds the ALJ provided specific and legitimate reasons for rejecting Dr. Underwood's opinion, in compliance with the regulations and Tenth Circuit law.  *See* 20 C.F.R. § 416.927(c); *Watkins*, 350 F.3d at 1301.  Even though Dr. Underwood was Plaintiff's treating

physician, his opinion was vague, unsupported with clinical findings, and included opinions reserved to the Commissioner.  Accordingly, the undersigned identifies no error.

### 2.     Third-Party Statement from Plaintiff's Mother

Plaintiff argues that the ALJ improperly considered a third-party statement from Plaintiff's mother (R. 212-219).  Social Security Ruling ("SSR") 06-03p requires the ALJ to consider evidence from "other sources," such as relatives.  SSR 06-03p.[1]  When such an opinion "may have an effect on the outcome of the case," the ALJ should explain the weight given to the opinion or otherwise ensure that the discussion of the evidence allows a subsequent reviewer to follow his reasoning.  *Id.*  In evaluating evidence from sources such as parents, the ALJ may appropriately consider such factors as "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.*

Here, the ALJ gave the mother's statement "some, but not great weight," as the "possibility always exists that a significant other may express an opinion in an effort to assist a claimant with whom she sympathizes for one reason or another." R. 22.  The ALJ further explained that, "[m]ore importantly, [it] appears that claimant's limitations are based on his subjective complaints of 'pain,'" yet his mother noted that Plaintiff "could lift 10 to 15 pounds, mow the lawn, make breakfast and hunt and fish several times a year, despite his complaints of pain." *Id.*  The ALJ further explained that Plaintiff had achieved pain relief with medication, there was little to no evidence that Plaintiff's medication caused drowsiness, no surgical intervention to address Plaintiff's back problems was recommended, and Plaintiff declined knee surgery despite his complaints of knee issues.  *Id.*

---

[1] SSR 06-03p was rescinded effective March 27, 2017, but it still applies to claims that were filed before that date.  *See* 82 Fed. Reg. 15263-01, 15263, 2017 WL 1105348 (Mar. 27, 2017).

Plaintiff argues the ALJ erred by finding that the mother's statement may be influenced by sympathy for Plaintiff, because such a finding is speculative and boilerplate.  Plaintiff also takes issue with the ALJ's various findings regarding the mother's statement, such as Plaintiff's ability to fish and hunt, his personal care issues, his drowsiness caused by medication, and his ability to perform household chores such as mowing the lawn, cleaning his room, and performing household repairs.  *See* ECF No. 13 at 6-7.  The undersigned identifies no error.  The ALJ appropriately considered Plaintiff's mother's statement as a statement about Plaintiff's symptoms and how they affect his activities of daily living and ability to work, as he was required to do.  However, the ALJ was not required to give this statement any particular weight, and the ALJ explained his reasons for limiting the weight given to this statement.  Plaintiff fails to identify any inconsistency between the sedentary RFC and Plaintiff's mother's statement.  Finally, the ALJ's speculation as to Plaintiff's mother's familial sympathy is not itself a basis for finding the ALJ's evaluation inadequate.  *See* SSR 06-03p (in considering evidence from non-medical sources such as parents, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence").

### C.    ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7.  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities."  *Id.*  If they are inconsistent, then the ALJ "will

10

determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 416.929(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Here, the ALJ granted "little probative weight" to Plaintiff's testimony, because his allegations regarding the disabling severity of his pain were inconsistent with the evidence of record. R. 21. In particular, the ALJ noted that Plaintiff had a "very poor" earnings record and had been a marijuana user since childhood, which "raise[d] questions as to whether the claimant's continuing unemployment is actually due to medical impairments." *Id.* The ALJ further noted

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

that Plaintiff had declined right knee surgery in April 2015, even though his medical provider indicated it had a fairly short recovery period and would relieve much of his pain. *Id.* (citing R. 335-336).[3]  Plaintiff also declined a steroid injection of the right knee in April 2015. *Id.* (citing R. 335-336).  Regarding his left knee, the ALJ noted Plaintiff requested an MRI in April 2015 "to show that he needs disability because he cannot work." *Id.* (citing R. 335-336).  Plaintiff's medical provider indicated that if the left knee had a problem such as a meniscal tear, it could be repaired and would allow him to work again; however, Plaintiff stated that he "just wants to get on disability and not worry about it," because his "back is too bad too." *Id.* (quoting R. 336) (quotation marks omitted).  He also declined both a left knee injection and a referral for behavioral health services. *Id.* (citing R. 335-336).  *See also* R. 339 (Plaintiff reported to Dr. Underwood in January 2015 that another doctor wanted to perform surgery on his knee, but he was anxious about it and did not want to do it yet), R. 407 (Plaintiff reported to behavioral health specialist in June 2015 that he "doesn't trust having knee surgery" and doesn't want "anyone cutting on me").  The ALJ additionally noted that Plaintiff reported to Dr. Craven in August 2015 that he was not taking any prescription or over-the-counter medication despite his back pain. *Id.* (citing R. 308).

Plaintiff alleges the ALJ erred in this analysis, by ignoring Plaintiff's limited activities of daily living; by overlooking the significance of positive straight-leg raising test results and evidence of leg atrophy at the February 2016 consultative exam; by diminishing Plaintiff's complaints of knee pain and mental issues; by improperly faulting Plaintiff's failure to seek treatment beyond medication; and by diminishing the significance of Plaintiff's sleep apnea.  ECF No. 13 at 8-10.  Plaintiff does not dispute he had a poor work history or used marijuana prior to his alleged disability.

---

[3] The ALJ incorrectly noted that the visit at which Plaintiff declined knee surgery occurred in April 2014.  *See* R. 21, 335-336.

The undersigned finds that the ALJ's consistency analysis was proper.  Regarding his daily activities, Plaintiff complains that his ability to do tasks such as performing household chores, preparing simple meals, and driving does not mean he could perform substantial gainful activity. However, it is proper for the ALJ to consider Plaintiff's activities in evaluating his complaints. *See* SSR 16-3p, at *7 (stating that ALJ should consider claimant's daily activities as part of consistency analysis).  The ALJ accurately listed Plaintiff's activities as he and his mother reported.  The ALJ was not required to find a direct correlation between his activities and the demands of substantial gainful activity.

As for the positive straight-leg testing at the February 2016 consultative exam, the ALJ noted the finding in determining the RFC, along with other normal and abnormal findings from the physical exam.  R. 25-26 (citing R. 521-53).  However, the ALJ also pointed out that Plaintiff has denied taking any medication for his back pain and that Plaintiff's physical examination of the lower back was largely normal in August 2015.  R. 21-22 (citing R. 308-309).  At this examination, Plaintiff demonstrated negative straight-leg raising.  R. 309.  *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (routinely normal clinical examination findings undermined claimant's allegations).

As for the evidence of leg atrophy, Plaintiff points to asymmetrical measurements of his calf circumferences (50 centimeters on right and 46 centimeters on left).  *See* R. 528.  However, Plaintiff also demonstrated normal muscle bulk and tone at that examination, with strength rated at 5/5 for all extremities.  R. 523.  Plaintiff only speculates that he suffered muscle atrophy based on his calf measurements.  Regarding Plaintiff's knee complaints, the ALJ accurately and properly explained that the severity of his knee impairments was undermined by Plaintiff's decision not to pursue surgery or injections that could relieve his knee pain.  R. 21, 308.

Plaintiff also faults the ALJ for stating that Plaintiff "has not required additional treatment such as physical therapy or surgery for his complaints." R. 28. Plaintiff argues this statement is "flat wrong," because Dr. Underwood referred Plaintiff for physical therapy in February 2016. ECF No. 13 at 10 (citing R. 322). However, Plaintiff himself admits it is "uncertain . . . whether he ever received any physical therapy." *Id.* The ALJ's statement in this regard is not plainly inaccurate, and it is undisputed that Plaintiff declined opportunities for both surgery and physical therapy for his impairments. Plaintiff further alleges that the ALJ improperly faulted Plaintiff's reliance on ibuprofen and tramadol for pain control, contending that they are both powerful drugs. Even if those drugs are powerful, the ALJ nonetheless accurately stated that Plaintiff relied on medications alone for pain relief and declined more invasive options such as injections and surgery. The undersigned identifies no error.

Plaintiff further argues the ALJ failed to "connect up" the importance of his anger issues, paranoia, and need for reminders. ECF No. 13 at 9. However, the ALJ noted that Plaintiff underwent sporadic behavioral treatment for depression and anxiety during the relevant period, no-showed several mental health appointments, declined a referral for behavioral health services in 2015, and had a normal mental status exam in September 2016. R. 19 (citing R. 487), 21-22 (citing R. 309, 335-336).

Finally, Plaintiff contends the ALJ failed to link his obesity to his severe sleep apnea syndrome, and he diminished the significance of the sleep apnea. However, Plaintiff testified that he did not use his CPAP machine to alleviate his sleep apnea, because he needed to have it recalibrated. R. 54. Moreover, the ALJ noted Plaintiff's sleep apnea was severe at step two, and Plaintiff fails to show that the ALJ's evaluation of sleep apnea was inaccurate or did not account for the effects of his sleep apnea. Again, Plaintiff only asks the Court to re-weigh the evidence,

which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.  The undersigned

finds the ALJ's consistency discussion satisfies SSR 16-3p.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a

party may file specific written objections to this report and recommendation.  Such specific written

objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma

by June 26, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3)

directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been
> properly objected to.  The district judge may accept, reject, or modify the
> recommended disposition; receive further evidence; or return the matter to the
> magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which

"provides that the failure to make timely objections to the magistrate's findings or

recommendations waives appellate review of both factual and legal questions."  *United States v.*

*One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*,

950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for

*de novo* review by the district court or for appellate review.

**SUBMITTED** this 12th day of June, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**