UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRAVAS M.P., | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 18-CV-0663-CVE-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social** | ) |
| **Security Administration,** | ) |
| | ) |
|       **Defendant.** | ) |

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 17) of the magistrate judge recommending that the Court affirm the Commissioner of the Social Security Administration's (the Commissioner) decision to deny plaintiff's claim for disability benefits. Plaintiff has filed a timely objection (Dkt. # 18) to the report and recommendation, and defendant has filed a response (Dkt. # 19) to plaintiff's objection.

**I.**

On July 24, 2015, plaintiff applied for disability benefits and alleged that he had been disabled since January 7, 2010. Dkt. # 10, at 166. Plaintiff's claim was denied initially and upon reconsideration. Id. at 67, 79. Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was held on February 21, 2018. Plaintiff was represented by counsel at the hearing. Id. at 42. Plaintiff was 46 years old on the date of the hearing and he lived with his mother. Id. at 44-45. The ALJ reviewed plaintiff's work history and noted that plaintiff reported some income in 2009 and 2010, but he had no income for 2006, 2007, or 2008. Id. at 45. Plaintiff

testified that he performed small jobs between 2006 and 2008, but he was not paying rent and he did not earn a regular income. Id. at 46. Plaintiff injured his back while helping his cousin lay carpet in 2009, and his primary complaints were knee and back pain. Id. Plaintiff claims that he has difficulty walking, and he wears a knee brace and walks with a cane. Id. at 49-50. Plaintiff testified that reaching causes pain in his back and he suffers from tingling or numbness in his hands that makes it difficult for him to grasp objects. Id. at 54-55. Plaintiff suffers from sleep apnea and it affects his ability to sleep soundly, but he claims that his CPAP machine is not working properly and he does not use it. Id. at 57-58. The ALJ called a vocational expert (VE) to testify and posed a hypothetical without a reaching limitation, and the VE testified that the hypothetical claimant would be able to work as a table worker and optical goods assembler. Id. at 63-64.

On April 5, 2018, the ALJ issued a written decision denying plaintiff's claim for disability benefits. Plaintiff had not engaged in substantial gainful activity since July 24, 2015, the date of his application for disability benefits. Dkt. # 10, at 21. The ALJ found that plaintiff had the severe impairments of "degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the knees, sleep apnea, morbid obesity, depression, and anxiety." Id. at 22. Plaintiff had non-severe impairments of hypertension and restless limb disorder, but the ALJ determined that the conditions had minimal or no effect on plaintiff's ability to work. Id. Plaintiff complained of chest pain and shortness of breath, but the ALJ found no medical evidence that plaintiff had been diagnosed with a cardiovascular disorder. Id. In July 2017, plaintiff was evaluated for a sleep disorder and he was diagnosed with sleep apnea, and his sleep apnea responded to treatment. Id. Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 23.

The ALJ proceeded to step four of the analysis and found that plaintiff had the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a). Specifically, the undersigned finds that claimant can occasionally lift and/or carry 10 pounds and frequently left and/or carry up to 10 pounds. He can stand and/or walk at least two hours in an 8-hour workday. He can sit at least six hours in an 8-hour workday. He cannot climb such things as stairs and ramps, stoop, kneel or crouch more than occasionally. He is limited to simple, repetitive tasks. He can relate to supervisors or co-workers only superficially. He cannot work with the public.

Id. at 24. The ALJ summarized plaintiff's testimony and noted that plaintiff's primary complaints were knee and back pain. Id. at 25. Plaintiff claimed that he injured his back while laying carpet in 2009 and he had not worked since the back injury occurred. Id. However, the ALJ noted that plaintiff had a poor work history and he admitted that he used marijuana since the age of 11. Id. Plaintiff also declined knee surgery in 2015 and advised his physicians that his knee pain was controlled with Ibuprofen. Id. The ALJ considered plaintiff's testimony that he had been advised that surgery to repair a right knee meniscal tear might be unsuccessful. Id. However, the medical evidence showed that plaintiff had been educated about the benefits of the surgery, and he declined surgery and a steroid injection because he did not want anyone "messing with his knee. Id. A physician also advised that plaintiff have surgery to repair a left knee meniscal tear, and plaintiff stated that he "just wants to get on disability and not worry about it." Id. The ALJ also considered a third-party function report prepared by plaintiff's mother, who noted that plaintiff could not perform prolonged activities and took medication that made him drowsy. Id. at 26. She stated that plaintiff could perform household chores, prepare meals, lift 10 to 15 pounds, and go fishing several times a year. Id. The ALJ gave some, but not great, weight to her statements and noted that there was the potential that plainitff's mother's statements were affected by sympathy for the claimant.

3

Id. The ALJ summarized the medical evidence in detail and considered a medical source statement submitted by one of plaintiff's treating physicians, Michael Underwood, M.D. The statement is a one page document listing a diagnosis of "54.5," which is a diagnosis of lower back pain. Id. at 382. Dr. Underwood opines that plaintiff is unable to work for an undetermined amount of time due the diagnosis of lower back pain. Id. At steps four and five of the analysis, the ALJ determined that plaintiff had no past relevant work but there were jobs available in the regional and national economies that plaintiff could perform with his RFC. Id. at 32-33.

Based on this finding, the ALJ determined that plaintiff was not disabled. The Appeals Council found no basis to change the ALJ's decision and denied plaintiff's request for review, and the ALJ's decision is the final decision of the Commissioner. Id. at 5-6. Plaintiff filed this case requesting judicial review of the denial of his claim for disability benefits, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommends that the Commissioner's decision be affirmed.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

### III.

Plaintiff argues that the ALJ erred by failing to include a reaching limitation in the RFC and the hypothetical posed to the VE, and he claims that the ALJ failed to a provide an adequate explanation for declining to give a medical source statement by Dr. Underwood and a third party function report by plaintiff's mother greater weight. Dkt. # 18, at 1-4. Plaintiff further argues that the ALJ erred by finding that plaintiff's subjective complaints were not consistent with the objective medical evidence. Id. at 5-7.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis, finding that sufficient jobs existed in the national economy to allow plaintiff to work. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find

that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ erred by failing to include a reaching limitation in the RFC and the hypothetical posed to the VE, because there is evidence in the administrative record that plaintiff had a neck impairment that would necessarily have impacted his ability to reach. Dkt. # 18, at 1-3. Defendant responds that there is no medical evidence suggesting that plaintiff's ability to reach is impaired, and the ALJ provided a sufficient explanation for rejecting plaintiff's subjective complaints related to reaching. Dkt. # 19, at 1-2.

In August 2016, Dr. Underwood noted that plaintiff complained of numbness and pain in his left forearm, and plaintiff had a limited range of motion in his neck. Dkt. # 10, at 320. Plaintiff continued to complain of tingling in his arm and a physician found evidence of degenerative disc disease, and the physician found that plaintiff had mild weakness in his left wrist extensors and biceps and a diminished left brachioradials reflex. Id. at 310-11. However, the physician did not suggest that plaintiff was unable to reach and he did not make any objective findings concerning a medical cause for plaintiff's pain or tingling in his left arm. Id. There is evidence that plaintiff complained of difficulty with reaching. Id. at 57, 189, 309, 320. However, plaintiff has cited no medical evidence that the diagnosed impairment of his cervical spine caused pain in his arms or hands, and there is no diagnosis from a physician making such a connection. The ALJ gave plaintiff's testimony little probative weight, because plaintiff's subjective complaints of pain were inconsistent with the objective medical evidence. Id. at 25. Plaintiff also had a poor work history and a history of using recreational marijuana[1] since the age of 11, and the ALJ questioned whether plaintiff's inability to work was caused by a medical impairment. Id. The magistrate judge found that plaintiff's argument that a reaching limitation should have been included in the RFC was unpersuasive, even though the ALJ did not specifically cite Dr. Underwood's August 2016 finding that plaintiff had a limited range of motion in his neck. Dkt. # 17, at 5.

---

[1] Defense counsel suggests that plaintiff's use of marijuana is irrelevant, because medical marijuana is now legal in Oklahoma. Dkt. # 18, at 5. However, plaintiff admitted to using marijuana since the age of 11 and he cites no evidence that he was prescribed marijuana as treatment for a medical condition. The ALJ reasonably inferred that plaintiff's use of marijuana was recreational in nature, and the ALJ could rely on this as a factor affecting plaintiff's credibility.

The Court has independently reviewed the parties' arguments and the administrative record, and finds that there is no medical evidence suggesting that a reaching limitation should have been included in the RFC or the hypothetical posed to the VE. The record contains several instances where plaintiff complained of pain or tingling in his left arm, but these complaints are not supported by objective medical evidence of an impairment limiting plaintiff's ability to reach. Plaintiff argues that the impairment of his cervical spine necessarily affects his arm function, and the ALJ cannot ignore an impairment found at step two at a later part of the analysis. Dkt. # 18, at 3. The ALJ noted plaintiff's testimony and his subjective complaints concerning arm pain or difficulty with reaching, but he accurately summarized the medical evidence and found no evidence that a physician had suggested or imposed a reaching limitation. The Court has reviewed the medical evidence and the vast majority of the evidence concerns plaintiff's complaints of knee pain, and any limitation on plaintiff's ability to reach is based solely on his subjective complaints. The ALJ's decision not to include a reaching limitation in the RFC or the hypothetical posed to the VE is supported by substantial evidence.

## B.

Plaintiff argues that the ALJ failed to properly assess a medical source statement by Dr. Underwood that plaintiff had low back pain and was unable to work, and he also claims that the ALJ should have given more weight to a third-party function report prepared by his mother. Dkt. # 18, at 4-5. Defendant responds that Dr. Underwood's opinion that plaintiff was unable to work goes to the ultimate issue of disability, and the decision concerning plaintiff's ability to work is an issue that is reserved solely for the Commissioner. Dkt. # 19, at 5. As to Dr. Underwood's opinion concerning plaintiff's lower back pain, defendant argues that the evidence shows that plaintiff's back pain was

controlled by over-the-counter medication and plaintiff did not seek additional treatment for this condition. Id. at 4. Defendant further argues that the ALJ adequately explained why he gave less weight to the third-party function report of plaintiff's mother, and it was reasonable for the ALJ to assume that sympathy for plaintiff could play some role in the statements offered by his mother. Id. at 7.

When evaluating a treating physician's opinion under § 404.1527, "'the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct.'" Brownrigg v. Berryhill, 688 F. App'x 542, 548 (10th Cir. Apr. 19, 2017)[2] (quoting Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011)). First, the ALJ must determine whether the medical opinion qualifies for "controlling weight." Id. A treating physician's medical opinion is given controlling weight if, on the issues of the nature and severity of the plaintiff's impairments, the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(c)(2). If the treating physician's opinion is entitled to controlling weight, the ALJ's analysis of the weight of that opinion is complete. However, if the ALJ determines that the medical opinion is not entitled to controlling weight, or if the ALJ is evaluating a non-treating physician's opinion, the ALJ must move onto step two and apply the following factors to determine how much weight to give the medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

---

[2] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 31.1; 10th Cir. R. 32.1.

>   which an opinion is rendered; and (6) other factors brought to the ALJ's attention
>   which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).

Dr. Underwood issued a medical source statement (Dkt. # 10, at 382), noting a diagnosis of "M54.5" and stating that plaintiff could not work. The statement also contains a notation that plaintiff's condition is partially controlled by medication. The ALJ cited federal regulations and a Tenth Circuit decision concerning the weight to be given to a medical source statement issued by a treating physician, and noted that a treating physician's opinion is entitled to controlling weight if it is well-supported by medical evidence and consistent with other evidence in the record. Dkt. # 10, at 32. The ALJ found that plaintiff's low back pain was successfully controlled with over-the-counter medication and prescription pain medication, and plaintiff had not sought additional treatment for this condition, even though he had access to low or no cost medical care from the Cherokee Nation. Id. A decision on the ultimate issue of a claimant's disability is reserved for the Commissioner, and the ALJ found that Dr. Underwood's opinion on plaintiff's ability to work was entitled to no special significance. Id.

Dr. Underwood offers an opinion that plaintiff is unable to work for an undetermined amount of time due to lower back pain, and the ALJ treated this as a statement that plaintiff has lower back pain and that he is unable to work. Plaintiff does not specify whether he is objecting to the ALJ's rejection of Dr. Underwood's opinion that plaintiff has lower back pain or that plaintiff is unable to work. As to plaintiff's ability to work, a treating physician's opinion that a claimant is totally disabled is not binding on the Commissioner, and the responsibility for making this determination is always reserved for the Commissioner. 20 C.F.R. § 416.927(d); Castellano v. Secretary of Health

and Human Servs., 26 F. 3d 1027, 1029 (10th Cir. 1994). The ALJ properly gave no weight to Dr. Underwood's opinion that plaintiff was unable to work, because the conclusion as to the ultimate issue of disability is reserved for the Commissioner. As to Dr. Underwood's opinion concerning lower back pain, the ALJ determined that this opinion was not supported by the medical evidence and, in fact, was inconsistent with evidence that plaintiff's back pain was controlled by medication. Dkt. # 10, at 32. Plaintiff generally cites to the administrative record and argues that there was evidence that he suffered from back pain. Dkt. # 18, at 5. However, evidence that plaintiff suffered from back pain in the past does not detract from the ALJ's conclusion that plaintiff did not seek treatment for back pain after September 2016 and that his back pain was controlled by medication. Dkt. # 10, at 310-315. The medical source statement signed by Dr. Underwood contains no supporting evidence and does not identify any specific limitations on plaintiff's ability to work, and even Dr. Underwood noted that plaintiff's back pain is partially controlled by medication. Id. at 382. Plaintiff's objection (Dkt. # 18) fails to cite any specific evidence in the record contradicting the ALJ's decision to give little weight to Dr. Underwood's medical source statement, and the Court finds that the ALJ adequately explained his decision not to give Dr. Underwood's opinion as back pain controlling weight.

      Plaintiff objects to the ALJ's decision to afford "some, but not great weight" to the third-party function report of plaintiff's mother, and he claims that the ALJ engaged in speculation when the ALJ stated that the report was affected by her sympathy toward the claimant. Plaintiff's mother provided a third-party function report dated August 5, 2016, stating that plaintiff could perform some household chores, but his medication made him drowsy and he could not engage in prolonged activity. Dkt. # 10, at 26. She stated that plaintiff could lift 10 to 15 pounds, but plaintiff's physical

condition limited his ability to squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and get along with others. Id. The ALJ afforded this report "some" weight but he recognized the possibility that the opinions expressed by plaintiff's mother could be affected by her sympathy for plaintiff. Id. The ALJ also took into account that plaintiff's symptoms were controlled with medication and he had declined knee surgery that could have relieved many of his complaints. Id. The Court finds no error in the ALJ's treatment of this evidence. The ALJ did not wholly disregard the evidence offered by plaintiff's mother and he merely noted the potential that she may be sympathetic to her son. The limitations suggested by plaintiff's mother were solely the result of plaintiff's subjective complaints of pain, but the medical evidence showed that medication relieved much of plaintiff's pain and plaintiff declined knee surgery that could have helped with his knee problems. Id. The ALJ did not overstate the activities of daily living that plaintiff could perform, and he did not focus solely on evidence that tended to support a finding that plaintiff was not disabled. The Court rejects plaintiff's objection to the ALJ's treatment of opinion evidence.

## C.

Plaintiff argues that the failed to properly assess plaintiff's subjective complaints and the ALJ gave undue weight to plaintiff's decision to reject surgery or other medical treatment.[3] Dkt. # 18, at 6-7. Defendant responds that the ALJ provided specific reasons for rejecting plaintiff's subjective complaints and he properly afforded little weight to plaintiff's testimony concerning the severity of his conditions. Dkt. # 19, at 7-11.

---

[3] The Court will consider only those aspects of the ALJ's consistency findings to which the plaintiff has made a specific objection, and portions of the report and recommendation on this issue which are not specifically objected to are accepted.

Under Social Security Ruling 16-3P, an ALJ must evaluate a claimant's subjective complaints concerning his symptoms to determine whether those complaints are consistent with other evidence in the administrative record. SSR 16-3P, 2016 WL 1119029 at *2. If the ALJ finds consistency between the complaints and evidence of record, this tends to show the claimant's symptoms are more likely to reduce his capacity to work. Id. at *7. In contrast, a finding that the claimant's subjective complaints are not consistent with the evidence supports a determination that claimant's symptoms are less likely to reduce his capacity to work. Id. The consistency analysis is "peculiarly the province of the finder of fact" and such determinations will not be upset if the findings are supported by substantial evidence. Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010). The ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. The key issue is whether the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility" and she does not need to make a formalistic restitution of any particular factors. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ summarized plaintiff's testimony and found that it should be given little weight, because plaintiff's allegations concerning the severity of his pain were inconsistent with other evidence in the record. Dkt. # 10, at 25. Plaintiff argues that the ALJ improperly declined to give greater weight to plaintiff's testimony because he refused to undergo certain surgical procedures, but plaintiff claims that the ALJ failed to consider that he suffers paranoia and anxiety about seeking medical care. Dkt. # 18, at 6. However, the ALJ specifically considered this issue and discussed evidence in the record calling into question whether plaintiff's anxiety was genuine. Plaintiff visited Julie Gaskins, a nurse practitioner, for a routine appointment and Gaskins discussed the benefits of

surgery to repair a meniscal tear. Dkt. # 10, at 340. Plaintiff told Gaskins that he "just wants to get on disability" and he was not interested in further treatment on his knee. Id. Plaintiff also declined an injection for his left knee that would have been a non-surgical option for treatment, and he also declined behavioral health services. Id. Combined with plaintiff's poor work history,[4] the ALJ reasonably considered plaintiff's refusal to accept treatment and his statements made to Gaskins that he simply wanted to be on disability as factors supporting a finding that plaintiff's testimony was inconsistent with the medical evidence.

Plaintiff also argues that the ALJ gave insufficient weight to evidence that plaintiff had a positive straight leg test and that there was evidence of atrophy of plaintiff's leg muscles. Dkt. # 18, at 6-7. The ALJ noted the positive straight leg test at 20 degrees bilaterally, and the report from the same examination also shows a four centimeter discrepancy between the circumference of plaintiff's right and left calf muscles. Dkt. # 10, at 527, 532. However, there were other findings from the same examination showing that plaintiff had normal muscle strength, and the ALJ's decision accurately set forth the positive and negative findings from the examination. Id. at 30. The administrative record also contains a prior negative straight leg test result, and this finding was considered by the ALJ. Id. at 28, 313. This is a situation where the ALJ was presented with potentially conflicting medical evidence, and written decision shows that the ALJ considered and was aware of potential discrepancies in the medical evidence. The evidence cited by plaintiff is favorable to him, but this evidence is significantly outweighed by other evidence in the

---

[4]  Plaintiff complains that the ALJ did not give him an opportunity to defend his work record at the hearing. Dkt. # 18, at 5. However, the ALJ expressly asked plaintiff about gaps in his work history and plaintiff failed to offer a credible explanation for failing to obtain regular employment. Dkt. # 10, at 45-46.

administrative record that the supports the ALJ's consistency findings. The Court finds no error in the ALJ's treatment of the positive straight leg result and accompanying findings, and plaintiff has not shown that the ALJ failed to properly assess the consistency of plaintiff's subjective complaints with the evidence.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 1st day of September, 2020.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE